941 F.2d 1208
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Julette OUTLAW, Defendant-Appellant.
 No. 90-5834.
 United States Court of Appeals, Fourth Circuit.
 Argued May 10, 1991.
Decided Aug. 19, 1991.
 
 1
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge. (CR-90-17)
 
 
 2
 James Christopher Savage, Rockville, Md., for appellant.
 
 
 3
 Katharine Jacobs Armentrout, Assistant United States Attorney, Baltimore, Md. (Argued), for appellee; Breckinridge L. Willcox, United States Attorney, Joseph L. Evans, Assistant United States Attorney, Ethan L. Bauman, Assistant United States Attorney, Baltimore, Md., on brief.
 
 
 4
 D.Md.
 
 
 5
 AFFIRMED.
 
 
 6
 Before ERVIN, Chief Judge, CHAPMAN, Senior Circuit Judge, and CLAUDE M. HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 OPINION
 
 7
 CLAUDE M. HILTON, District Judge.
 
 
 8
 In January 1990 the grand jury returned an indictment charging Julette Outlaw with two counts of making false statements on two separate Federal Firearm Transaction Forms 4473 to two licensed firearms dealers in violation of 18 U.S.C. § 922(a)(6). It was alleged that the appellant falsely represented herself as a Camp Springs, Maryland resident when she was actually a resident of Washington, D.C.. Ms. Outlaw's boyfriend, Tyrone Pate, was also indicted for firearm violations for aiding and abetting the making of the false statements and for possessing a firearm after having been convicted of a crime punishable by more than one year of imprisonment. Those charges, however, were voluntarily dismissed. At trial, Ms. Outlaw was found guilty of the two violations. She was sentenced to three months' community confinement followed by two years supervised release. Ms. Outlaw appeals her conviction, arguing that the admission of evidence concerning Pate's disability to lawfully purchase firearms was irrelevant and unfairly prejudicial to her.
 
 I.
 
 9
 During the summer of 1989, the appellant was romatically involved with Tyrone Pate. Ms. Outlaw, a lifelong resident of Washington, D.C., lived with her son at 818 Chesapeake Street, S.E., Washington, D.C., which she had leased on April 17, 1989. Pate, on the other hand, resided with his mother at 7101 Rosencrans Drive, Camp Springs, Maryland.
 
 
 10
 According to Ms. Outlaw's written confession, Pate wanted her to purchase handguns for him. Because Pate was under age 21 and had previously been convicted of a criminal offense, the punishment for which exceeded one year imprisonment, he was unable to buy any firearms. In addition, there are no firearms stores in the District of Columbia and it was necessary for her to purchase the guns in Maryland. It is also unlawful for a nonresident to purchase firearms.
 
 
 11
 Consequently, Ms. Outlaw and Pate went to the Maryland Motor Vehicles Administration and obtained a Maryland State photo identification card for Ms. Outlaw listing Pate's address of 7101 Rosencrans Drive, Camp Springs, Maryland, as her address. Although there was evidence that Ms. Outlaw had stayed some nights at the Rosencrans Drive residence, the evidence established that she lived in Washington, D.C. with her son.
 
 
 12
 On the same day that she obtained the Maryland identification card, Ms. Outlaw and Pate went to two different Maryland gun stores where Ms. Outlaw ordered one handgun, at each store, in her own name. She provided the Rosencrans address as her own and displayed the newly acquired Maryland identification card as proof of residence.
 
 
 13
 Because the Maryland State Police conduct criminal record checks on all handgun purchasers, the purchases could not be completed on that day. After receiving the necessary police approval, Ms. Outlaw and Pate returned to each gun store, and purchased a total of four handguns at one store and a total of three handguns at the other store. At each store, Ms. Outlaw signed a Federal Firearm Transaction form 4473, falsely attesting to the fact that she lived at 7101 Rosencrans Drive, Camp Springs, Maryland. Each gun store representative testified that if he had known that she was not a Maryland resident then, in each instance, the handguns would not have been sold to her. After leaving the gun stores, Ms. Outlaw gave all seven of the handguns to Tyrone Pate.
 
 II.
 
 14
 During trial the government presented evidence that Tyrone Pate could not purchase firearms because he had been convicted of a crime punishable by more than one year of imprisonment. Appellant argues that the admission of this evidence was irrelevant and unfairly prejudicial to the appellant. Ms. Outlaw argues that such evidence neither tended to prove any element of the charges against her nor could such testimony be used by the government as evidence of her motivation.
 
 
 15
 For the government to prevail in its case against Ms. Outlaw, there were four elements which had to be proven beyond a reasonable doubt: 1) that on or about August 18, 1989, Ms. Outlaw made a written statement, as evidenced by the Department of the Treasury Internal Revenue Service Form 4473, or furnished or exhibited identification that she was a resident of the State of Maryland; 2) that the statement about her residence was false or Ms. Outlaw exhibited a false or fictitious or misrepresented identification card regarding such information; 3) that Ms. Outlaw knew such statements or identifications to be false; and 4) that Ms. Outlaw's statements were intended or likely to deceive the dealer concerning any fact material to the lawfulness of the sale of the firearm. See United States v. Hedgecoe, 420 F.2d 458 (4th Cir.1970), and 18 U.S.C. § 922(a)(6).
 
 
 16
 Ms. Outlaw argues that the trial court abused its discretion in admitting evidence demonstrating that Pate was not permitted by law to purchase or possess firearms. Yet that fact provides the entire context, necessity and justification for Ms. Outlaw's offense. There are two reasons in the record why Pate could not purchase the firearms which Ms. Outlaw purchased. First, since Pate was under twenty-one years of age, he could not purchase these firearms because they were handguns. Second, since Pate had previously been convicted of a crime punishable by more than one year imprisonment, he was barred from the purchase or possession of any firearm. 18 U.S.C. § 922(g). Accordingly, even if he had waited two months for his twenty-first birthday, he would still have been unable to purchase the guns.
 
 
 17
 Initially, the government sought to present evidence that Pate simply had such a conviction without going into the nature of that conviction. The district court made a relevance determination and balanced the probative value against the potential prejudice. The court determined the evidence was relevant and should be admitted with a proper cautionary instruction. Thereafter, at the suggestion of the defense, the parties entered into a stipulation even more favorable to the defense that Pate was simply prohibited by law from purchasing the firearms with no reason given for that disability. Thus, the basis for the disability could have been anything from being underage to having renounced American citizenship to having received a dishonorable discharge from the military. However, during the trial Ms. Outlaw's counsel attempted to suggest to the jury that the only and actual reason for Pate's disability was his underage status. After the suggestion that the disability was his underage status, the court permitted the government to introduce evidence that Pate had a disqualifying criminal conviction and gave a limiting instruction to the jury, cautioning the jurors as to the proper use of the fact of Pate's conviction.
 
 
 18
 Relevant evidence must be probative of a fact of consequence in the matter and must tend to make the existence of that fact more or less probable than it would be without the evidence. Fed.R.Evid. 401; United States v. Dornhofer, 859 F.2d 1195, 1199 (4th Cir.1988), cert. denied, 109 S.Ct. 1639 (1989). The ultimate fact of consequence is whether Ms. Outlaw was lying on the forms 4473 when she recited that she was a Maryland resident, living at Pate's address on Rosencrans Drive. The relevance of Pate's disability is the animating force which brings this crime into being. Ms. Outlaw was no more than a straw purchaser of firearms for Pate. Therefore, it is more likely that she is not simply mistaken about being a Maryland resident but that she intentionally falsified her address in order to act as that straw purchaser.
 
 
 19
 The district court balanced the probative value of the fact of Pate's disability against any unfair prejudice and determined that the probative value was not outweighed by any prejudicial effect and that the evidence might even generate sympathy for Ms. Outlaw. The court gave a limiting and cautionary instruction. The district court properly and prudently exercised its discretion when ruling that the government could introduce evidence that Pate had a disqualifying criminal conviction without presenting the nature of that conviction.
 
 
 20
 Accordingly the judgment of the district court is
 
 
 21
 AFFIRMED.
 
 
 22
 ERVIN, Chief Judge, and CHAPMAN, Senior Circuit Judge, joined.